John Farrell (Cal. Bar 99649)
jofarrell@beckerlawyers.com
BECKER & POLIAKOFF, P.A.
45 Broadway, 17th Floor
New York, NY 10006
Tel: (415) 302-6000

William R. Woodford (*pro hac vice forthcoming)*
woodford@avantechlaw.com
AVANTECH LAW, LLP
80 South 8th St., Suite 900
Minneapolis, MN 55402
Tel: (855)-750-9951

ATTORNEYS FOR PLAINTIFF
VTT TECHNICAL RESEARCH CENTRE OF FINLAND, LTD.

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### (WESTERN DIVISION)

| | |
|---|---|
| VTT TECHNICAL RESEARCH CENTRE OF FINLAND LTD., <br><br> Plaintiff, <br> vs. <br><br> TELEDYNE FLIR COMMERCIAL SYSTEMS, INC., <br><br> Defendant. | Case No. __2:26-cv-000016__ <br><br> COMPLAINT FOR PATENT INFRINGEMENT <br><br> DEMAND FOR JURY TRIAL |

Plaintiff VTT Technical Research Centre of Finland Ltd. files this Complaint and demand for a jury trial seeking relief for patent infringement by Defendant Teledyne FLIR Commercial Systems, Inc.  Plaintiff states and alleges the following:

**THE PARTIES**

1.     This case is brought by VTT Technical Research Centre of Finland Ltd. ("VTT"), a globally recognized leader in scientific and technological innovation.  VTT is a limited company organized and existing under the laws of Finland, with its headquarters in Espoo, Finland.  VTT's principal place of business is located at Tekniikantie 21, Espoo, PL1000, 02044 VTT, Finland.

2.     Established in 1942, VTT operates under the mandate of Finland's Ministry of Employment and the Economy, with a mission to drive scientific and technological advancement for the benefit of industry, society, and global innovation. Over the past eight decades, VTT has played a pivotal role in fostering groundbreaking research and transforming scientific discoveries into real-world applications that address critical challenges across multiple industries.

3.     With a legacy of discovery and innovation, VTT serves as a cornerstone of both fundamental and applied research in numerous technical fields.  Its research spans a broad spectrum, including information and communication technology, sustainable energy solutions, biotechnology, advanced materials, and automation. These efforts, including the scientific and technical breakthroughs that led to the patent at issue in this case, require significant investment from both public and private sources. VTT conducts approximately $190 million in research annually, with funding from the Finnish government, the European Union, and private industry partners who recognize VTT's role as a global leader in cutting-edge technology development.

4.     VTT's expertise is driven by a world-class team of more than 1,500 scientists, researchers, and engineers.  The knowledge generated through VTT's research extends far beyond Finland, benefiting governments, businesses, academic

1

institutions, and consumers around the world.  Every year, over 1,100 companies turn to VTT to enhance their products and services through research and development.  VTT's discoveries have directly contributed to advancements in healthcare, sustainability, manufacturing, cybersecurity, smart mobility, and telecommunications.  To maximize the societal and industrial impact of its research, VTT actively patents and commercializes its inventions, ensuring that breakthrough technologies reach the market while reinvesting proceeds into further innovation.  This model allows VTT to sustain and expand its mission of pioneering cutting-edge solutions that address both present and future challenges.

5.    As a testament to its leadership in scientific and technological innovation, VTT has been awarded more than 1,400 patents, with over 500 additional patent applications currently under examination in patent offices worldwide.  These patents cover a broad range of cutting-edge fields, including artificial intelligence, automation, semiconductor technology, and imaging and sensing technologies.  Among these innovations is the development of bolometers, which play a critical role in thermal imaging, remote sensing, security applications, and astronomical observation.  VTT's pioneering research in this field has led to significant advancements in the design and operation of bolometers, enabling improvements in efficiency, sensitivity, and scalability.  Through its patents, VTT continues to drive technological progress while ensuring that its inventions are commercialized and utilized to benefit industry and society.

6.    On information and belief, Defendant Teledyne FLIR Commercial Systems, Inc. ("Teledyne OEM") is a California corporation with its principal place of business at 6769 Hollister Avenue, Goleta, California 93117.  The corporation does business under the "Teledyne FLIR OEM" brand.

7.    On information and belief, Teledyne OEM is a corporate affiliate of Teledyne FLIR, LLC ("Teledyne FLIR"), a Delaware limited liability company with its

2

principal place of business at 27700 SW Parkway Ave, Wilsonville, Oregon, 97070. Teledyne FLIR is a defendant in a separate action brought by VTT in the United States District Court for the District of Delaware, captioned *VTT Technical Research Centre of Finland Ltd. v. Teledyne FLIR, LLC and Teledyne Technologies Incorporated*, No. 1:25-cv-00348-WCB (the "Delaware Action").  Teledyne FLIR is not a party to this action.  Nothing in this Complaint alters or withdraws VTT's allegations against Teledyne FLIR in the Delaware Action.

8. On information and belief, Teledyne OEM and Teledyne FLIR are global suppliers of thermal imaging and infrared sensing technologies with a broad product portfolio that includes infrared cameras, sensors, and imaging modules.  Among their offerings, Teledyne OEM and Teledyne FLIR, alone and in coordination, design, manufacture, market, use, sell, and offer for sale infrared camera cores and lenses incorporating bolometer-based detectors, including its Boson and Boson+ longwave infrared (LWIR) thermal camera modules.  These modules use uncooled microbolometer arrays that detect infrared radiation and generate thermal images.  On information and belief, these bolometer arrays incorporate key elements of the technology covered by the '369 patent, including bolometer circuit configurations that amplify detected radiation signals—an innovation at the heart of VTT's patented invention.

9. On information and belief, Teledyne Technologies Incorporated ("Teledyne Technologies") is a Delaware corporation with its principal place of business at 1049 Camino Dos Rios, Thousand Oaks, California, 91360, and is the ultimate parent of both Teledyne OEM and Teledyne FLIR.  Teledyne Technologies is a defendant in the Delaware Action.  Teledyne Technologies is not a party to this action. Nothing in this Complaint alters or withdraws VTT's allegations against Teledyne Technologies in the Delaware Action.

10. Teledyne Technologies specializes in imaging, instrumentation, and

defense electronics, supplying advanced sensor and imaging technologies across military, industrial, and commercial sectors.  Through its subsidiaries, Teledyne OEM and Teledyne FLIR, Teledyne Technologies develops and sells infrared imaging products that rely on microbolometer technology, including the accused Boson and Boson+ thermal imaging modules.  On information and belief, Teledyne Technologies exercises control over Teledyne OEM and Teledyne FLIR's operations, product development, and sales strategy, ensuring that Teledyne OEM's and Teledyne FLIR's infringing bolometer-based products are manufactured, marketed, and sold as part of Teledyne Technologies' broader imaging and sensing business.

11.    On information and belief, in May 2021, Teledyne Technologies acquired FLIR Systems, Inc. through a two-step merger in which the surviving company was renamed Teledyne FLIR, LLC.  As a result of that transaction, FLIR Commercial Systems, Inc.—a pre-existing FLIR operating subsidiary—became an indirect subsidiary of Teledyne Technologies and was renamed Teledyne FLIR Commercial Systems, Inc.  Following the acquisition, Teledyne OEM and Teledyne FLIR continued the FLIR business within Teledyne's Digital Imaging segment, including design, manufacture, marketing, and sales of the Accused Instrumentalities. This acquisition strategically positioned Teledyne Technologies to expand its infrared imaging capabilities by incorporating Teledyne OEM's and Teledyne FLIR's extensive portfolio of microbolometer-based thermal imaging products.  As part of this acquisition, Teledyne Technologies gained direct access to Teledyne OEM's and Teledyne FLIR's Boson and Boson+ thermal imaging modules, which incorporate uncooled bolometer arrays that employ the innovations claimed in the '369 patent.  These products benefit from the patented bolometer configurations that improve sensitivity, signal amplification, and multiplexing efficiency—critical advancements that set VTT's invention apart from prior designs.  On information and belief, since the acquisition, Teledyne OEM, Teledyne Technologies, and Teledyne FLIR have jointly developed,

manufactured, marketed, and sold these infringing infrared imaging products, leveraging VTT's patented technology to enhance their commercial offerings.

12.    For convenience, the "Teledyne Entities" refers to Teledyne OEM and its corporate affiliates Teledyne FLIR and Teledyne Technologies.  Only Teledyne OEM is a defendant in this action.

13.    On information and belief, Teledyne OEM operates in concert with Teledyne FLIR and Teledyne Technologies to develop, manufacture, market, offer to sell, sell, and import the Boson and Boson+ camera-core products. The Teledyne Entities share centralized management and intellectual-property functions, overlapping officers and agents, coordinated branding, and integrated sales channels.

14.    On information and belief, Teledyne OEM's actions alleged herein are direct and, where applicable, undertaken by and through its coordinated relationship with its affiliates. Knowledge, intent, and direction held or conveyed within the Teledyne Entities—including through their centralized legal department—were communicated to, and are imputable to, Teledyne OEM.

15.    The Teledyne Entities have long been aware of VTT's pioneering contributions to bolometer technology and have directly benefited from advancements in the field developed by VTT.  The Teledyne Entities have incorporated core aspects of VTT's patented innovations—including bolometer circuit configurations—into their thermal imaging products, without authorization.  Despite knowing of the technical significance and patent protection surrounding VTT's inventions, the Teledyne Entities have continued to commercialize and profit from infringing products, including the Accused Instrumentalities (defined below), rather than seeking a license from VTT. Their continued exploitation of VTT's bolometer advancements constitutes direct, indirect, and willful infringement of the '369 patent, as detailed in this Complaint.

16.    On information and belief, the Teledyne Entities have entered into a joint enterprise for the purpose of exploiting and profiting from the Accused

5

Instrumentalities, as detailed herein.  On information and belief, the Teledyne Entities have together entered into express and/or implied agreements to exploit and profit from the Accused Instrumentalities.

17.   On information and belief, the Teledyne Entities, via their joint enterprise, generate revenues, business goodwill, and market share, which bolsters their respective reputations and ability to generate sales of the Accused Instrumentalities.   On information and belief, the actions of the Teledyne Entities were carried out in furtherance of the common purpose of exploiting and profiting from the Accused Instrumentalities.

18.   On information and belief, the actions of the Teledyne Entities complained of herein benefit the Teledyne Entities and, as such, exhibit a common pecuniary interest (including but not limited to revenues, goodwill, market share, and sales advantage) between the Teledyne Entities.  On information and belief, the Teledyne Entities are sophisticated parties, entered into agreements with each other, and mutually exercise control over the joint enterprise.

19.   On information and belief, the joint enterprise exists and operates in this judicial District, including at Teledyne OEM's Goleta facility identified above.

20.   VTT brings this action to protect its intellectual property rights and to secure fair compensation for the unauthorized use of its patented bolometer technology.

**THE ASSERTED PATENT**

21.   On November 22, 2011, United States Patent No. 8,063,369 ("the '369 patent") titled "Bolometer Element, Bolometer Cell, Bolometer Camera and Method" was duly and legally issued by the United States Patent and Trademark Office.  The '369 patent stems from Application No. 12/071,058, filed on February 14, 2008.  A true and correct copy of the '369 patent is attached to this Complaint as Exhibit A1.

22.   VTT is the present owner of the '369 patent through an unbroken, government-authorized chain of transfers and/or assignments.  The inventors initially

6

assigned all right, title, and interest in the '369 patent to the State Technical Research Centre of Finland (Valtion teknillinen tutkimuskeskus). Under Finnish Act No. 953/2010, that entity continued its operations under the new name VTT Technical Research Centre of Finland (Teknologian tutkimuskeskus VTT) while retaining its legal identity. In 2015, the Finnish government enacted Act No. 761/2014, establishing the VTT Technical Research Centre of Finland Ltd. (Teknologian tutkimuskeskus VTT Oy)—the Plaintiff here—and, through Act No. 762/2014, expressly authorized the transfer of all assets, intellectual-property rights, and business operations of its predecessor to the new limited company. Pursuant to that authority, in January 2015, the Finnish government executed a transfer that assigned to VTT Technical Research Centre of Finland Ltd. the entire ownership of the '369 patent, effective January 1, 2015. Accordingly, VTT now owns the full right, title, and interest in the '369 patent, together with the right to sue for and recover all past, present, and future damages.

23. Before the inventions disclosed in the '369 patent, bolometer technology faced significant limitations that hindered the performance, efficiency, and scalability of thermal imaging and sensing applications. While these designs were useful in certain applications, they suffered from several key drawbacks, including low signal-to-noise ratios, slow response times, and the need for complex external amplification systems to achieve higher sensitivity.

24. The '369 patent introduced a novel solution that overcame these longstanding technical limitations. The patented design involves a bolometer circuit that includes biasing and power amplification. This is achieved by electrically connecting two bolometers in series, allowing the first bolometer's heating resistance to be biased using a voltage through the heating resistance of the second bolometer. This innovative configuration enabled power amplification at the detector level, significantly improving the signal-to-noise ratio without the need for complex external amplification circuits. The improved bolometer structure of the '369 patent enabled the

development of highly sensitive thermal imaging systems with enhanced detection capabilities.

25.    By solving these persistent technical challenges, the '369 patent represented a substantial improvement in bolometer technology. The ability to amplify detected radiation signals directly within the bolometer element itself dramatically improved sensitivity and reliability while reducing system complexity. These advancements made high-performance bolometer arrays more practical and accessible, enabling their widespread adoption across critical industries where thermal sensing and imaging play a vital role.

26.    To the extent applicable, VTT has complied with 35 U.S.C. § 287 for the '369 patent.

## JURISDICTION AND VENUE

27.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 101, *et seq*. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

28.    This Court has personal jurisdiction over Teledyne OEM because it is incorporated in the State of California, rendering it "at home" in this State. Moreover, this Court has personal jurisdiction over Teledyne OEM consistent with the Due Process Clause of the United States Constitution and the California Long-Arm Statute because the claims asserted herein arise out of or are related to Teledyne OEM's business activities in this State, including: (i) at least a portion of the infringing acts alleged in this Complaint; (ii) conducting business in California, including the sale, offering for sale, and distribution of the Accused Instrumentalities; and (iii) regularly transacting business, engaging in persistent conduct, and deriving substantial revenue in California from goods and services, including those incorporating the Accused Instrumentalities.

29.    Venue is proper in this District pursuant to at least 28 U.S.C. § 1400(b)

because Teledyne OEM resides in the State of California and has committed acts of infringement and maintains a regular and established place of business in this District, including at 6769 Hollister Avenue, Goleta, California 93117.

## BACKGROUND

30. The Teledyne Entities have long been aware of VTT's innovations in bolometer technology, including the patented inventions of the '369 patent.

31. On information and belief, the Teledyne Entities maintain a dedicated intellectual property team that systematically monitors patents and patent applications relevant to their bolometer-based products. This team routinely tracks filings with the United States Patent and Trademark Office (USPTO) to assess potential patent threats and opportunities concerning their own bolometer-based products. On information and belief, sometime before March 26, 2020, Teledyne OEM's intellectual property team identified the '369 patent and recognized its technical relevance to Teledyne OEM's own bolometer-based products—including the very products at issue in this case.

32. On information and belief, the Teledyne Entities' awareness of VTT's '369 patent is further evidenced by their own patent prosecution activities. For example, on March 26, 2020, during prosecution of what became U.S. Patent No. 11,012,647 (the '647 patent), FLIR Systems, Inc. (now Teledyne FLIR) submitted an Information Disclosure Statement (IDS) citing VTT's '369 patent to the United States Patent and Trademark Office (USPTO). At that time, FLIR Systems, Inc. and its operating subsidiary FLIR Commercial Systems, Inc. (now Teledyne OEM) shared a centralized intellectual-property function and common in-house/outside patent counsel, and patent-related disclosures and communications were disseminated to, and known by, the OEM camera-core business responsible for the accused Boson/Boson+ products. Accordingly, the knowledge of the '369 patent possessed by FLIR Systems, Inc. was communicated to, and in any event is imputed to, Teledyne OEM by virtue of their parent–subsidiary relationship, centralized management and IP oversight,

overlapping officers/agents, and integrated OEM operations. This affirmative disclosure demonstrates that Teledyne OEM not only knew of the '369 patent but also recognized its technical relevance to Teledyne OEM's own bolometer-based products—including the products at issue in this case. Alternatively, to the extent Teledyne OEM claims it lacked actual knowledge, their failure to review their own publicly available patent disclosures constitutes willful blindness.

33. On information and belief, Teledyne Technologies—and Teledyne OEM—had actual knowledge of the '369 patent no later than 2021 in connection with Teledyne Technologies' acquisition of FLIR Systems, Inc. (now Teledyne FLIR) and FLIR Commercial Systems, Inc. (now Teledyne OEM). As part of that transaction, Teledyne Technologies' IP team conducted due diligence on the FLIR portfolio, reviewing FLIR patents, applications, and their file histories, including their prior IDS filings that disclosed the '369 patent to the USPTO. On information and belief, those diligence findings were shared with and implemented by Teledyne OEM and Teledyne FLIR, through post-closing integration, planning, and onboarding. Teledyne Technologies, Teledyne OEM, and Teledyne FLIR also shared a centralized corporate legal function and coordinated with common outside patent-prosecution counsel post-closing, and Teledyne's legal department communicated the '369 patent and its relevance to the Boson program to Teledyne OEM. Accordingly, by 2021, the Teledyne Entities had actual knowledge of the '369 patent and its technical relevance to their bolometer-based products, including the products at issue in this case. Alternatively, to the extent any Teledyne Entity claims it lacked actual knowledge, their failure to review and act on the publicly available FLIR prosecution record and diligence materials constitutes willful blindness.

34. On information and belief, the Teledyne Entities' intellectual property monitoring practices—combined with their affirmative citation of the '369 patent in an IDS during prosecution of their own '647 patent, which the Teledyne Entities have

marked as covering their Boson products—support a strong inference that the Teledyne Entities had actual knowledge of the '369 patent and its relevance to their products.  At a minimum, these facts demonstrate willful blindness to the patent's existence and applicability to the Accused Instrumentalities, such as the Boson and Boson+ products.

35.    Following a technical evaluation of the Teledyne Entities' thermal imaging products, including their Boson and Boson+ camera modules, VTT determined that these products incorporate bolometer sensing elements that practice the claims of the '369 patent. Accordingly, on June 18, 2024, VTT, through its legal counsel, sent a formal notice letter to the Teledyne Entities' General Counsel, Melanie S. Cibik, informing them of VTT's patent rights and detailing Teledyne's infringement.  Ms. Cibik is Vice President, General Counsel, Chief Compliance Officer, and Secretary of Teledyne Technologies, Teledyne OEM, and Teledyne FLIR.  Further, as explained above, Teledyne OEM and Teledyne FLIR are subsidiaries of Teledyne Technologies and are subject to the control and oversight of Teledyne Technologies and its executive officers and directors, including Ms. Cibik.  And on information and belief, since Teledyne Technologies' acquisition of Teledyne OEM and Teledyne FLIR, Teledyne Technologies' legal department—under the direction of Ms. Cibik—has managed and directed legal matters, inquiries, and communications on behalf of Teledyne Technologies and its subsidiaries, Teledyne OEM and Teledyne FLIR.

36.    The June 2024 letter included a copy of the '369 patent and a claim chart demonstrating how each element of exemplary patent claims is implemented in Teledyne's Boson and Boson+ products—the Accused Instrumentalities.  Notably, as part of its infringement analysis, VTT highlighted that Teledyne's own '647 patent— the same patent application where Teledyne had cited VTT's '369 patent—expressly demonstrated the infringing functionality.  In particular, Figure 2A of the '647 patent depicts a circuit in which an active bolometer is biased through a conduction path via a second bolometer, amplifying the detected radiation power—the innovation protected

by the '369 patent. On information and belief, the Boson and Boson+ products incorporate this circuitry, as outlined in VTT's correspondence with Teledyne and the infringement claim chart attached to the letter. As part of the evidence it relied on in making those allegations, VTT pointed out that the Teledyne Entities had virtually marked their Boson family of products with the '647 patent. On information and belief, the Boson+ product line is a later, enhanced iteration of the Boson, retaining the same sensor configuration and underlying bolometer technology, and likewise incorporates the infringing circuitry. In good faith, VTT invited the Teledyne Entities to engage in discussions regarding a potential licensing arrangement, aiming to resolve the matter amicably. VTT specifically asked the Teledyne Entities to let VTT know "if Teledyne Flir is interested in engaging in licensing discussions" and requested a comprehensive explanation "if Teledyne Flir believes that its products do not use VTT's patented technology."

37. On July 26, 2024, the Teledyne Entities, through their Chief Intellectual Property Counsel, David Zoetewey, responded to VTT's letter. Mr. Zoetewey's email confirmed that VTT's 2024 notice letter and the accompanying claim chart were received by Teledyne Technologies Incorporated, Teledyne FLIR, LLC, and Defendant Teledyne FLIR Commercial Systems, Inc., stating that Ms. Cibik had forwarded the letter to him "as the Chief Intellectual Property Counsel for Teledyne Technologies Incorporated and its subsidiaries." Mr. Zoetewey further requested that all future correspondence regarding the issues raised in VTT's June 2024 letter be directed to him. Instead of providing a substantive technical rebuttal, Teledyne summarily denied infringement, offering only a vague assertion that their products did not satisfy all elements of the '369 patent's claims. The response lacked any specific technical analysis and failed to address the claim chart's detailed mappings. However, Teledyne invited VTT to clarify its position, particularly regarding the amplification function described in claim 1.

38.    Over the next several months, the parties exchanged letters regarding Teledyne's infringement.  The discussions concluded with a December 24, 2024, letter from VTT reiterating its infringement and validity positions.  The December 2024 letter also underscored that Teledyne had failed to provide any meaningful distinctions between the circuit in the '647 patent's Figure 2A and the Accused Instrumentalities or provide any explicit denial that its Accused Instrumentalities incorporated the Figure 2A circuit, despite VTT expressly requesting that Teledyne provide such information if any existed.  In good faith, VTT proposed a final opportunity for licensing discussions to avoid litigation.

39.    The Teledyne Entities never responded.  Instead, they ceased all communications while continuing to manufacture, market, and sell their Boson and Boson+ products that incorporate VTT's patented technology—without authorization and without compensation to VTT.

40.    Alternatively, or in addition to actual knowledge of the '369 patent, the Teledyne Entities were willfully blind to the fact that their Accused Instrumentalities infringed VTT's patent.  On information and belief, despite receiving a formal notice letter from VTT in 2024—including a copy of the '369 patent and a detailed claim chart mapping each element of exemplary claims to their Boson and Boson+ products—the Teledyne Entities deliberately chose not to investigate whether their products overlapped with the asserted patent claims.  This conscious avoidance of confirming infringement reflects willful blindness to the risk of ongoing infringement.

41.    In response to VTT's letters, technical arguments, and detailed infringement claim chart, the Teledyne Entities failed to meaningfully address the substance of VTT's infringement allegations.  Instead, the Teledyne Entities continued to commercialize multiple product families—including the Boson and Boson+ products—that embodied technologies claimed in the '369 patent.

42.    Following the Teledyne Entities' continued refusal to address VTT's

13

infringement notice, VTT filed the Delaware Action, which asserts the '369 patent against the same Boson and Boson+ longwave infrared (LWIR) thermal camera modules that are at issue here.

43.    In the Delaware Action, the defendants moved to dismiss on various grounds.  Rather than burden the Court with disputes that could be resolved through amendment, VTT amended its complaint on June 25, 2025.  Teledyne again moved to dismiss.  On September 5, 2025, Judge William C. Bryson (sitting by designation) denied Teledyne's renewed motion to dismiss, holding that VTT had plausibly alleged infringement and willfulness.  (D.I. 29.)

44.    On October 17, 2025, the Court in the Delaware Action entered a Scheduling Order (D.I. 39) setting a five-day jury trial for March 29, 2027, with a final pretrial conference during the week of March 8, 2027, and detailed interim deadlines including: infringement contentions due December 5, 2025; invalidity contentions due January 12, 2026; a claim-construction process culminating in briefing between February 12 and March 13, 2026; and fact discovery closing June 1, 2026.  The Delaware Action is proceeding on that schedule.

45.    Only after losing their renewed motion to dismiss did Teledyne assert that VTT had "sued the wrong entity," contending that Teledyne OEM—not the Delaware defendants—was responsible for the accused Boson / Boson+ sales.  VTT sought to resolve that issue efficiently by inviting Teledyne to stipulate to Teledyne OEM's joinder in the Delaware Action so that all related entities could be adjudicated together under the existing schedule.

46.    Teledyne declined to stipulate to Teledyne OEM's joinder, asserting that venue in Delaware was improper for Teledyne OEM and insisting that VTT file a separate lawsuit in California.  By forcing a second action rather than allowing Teledyne OEM to appear where the dispute is already pending, the Teledyne Entities have multiplied proceedings, risk inconsistent results, and will likely waste judicial

resources on duplicative issues.

47.    VTT files this California action to ensure that the operating subsidiary that Teledyne claims is responsible for making and selling the accused Boson and Boson+ modules is before a court of competent venue.  Nothing in this Complaint alters or withdraws VTT's allegations in the Delaware Action.  VTT intends, where appropriate, to seek coordinated discovery and case management to minimize duplication and promote efficiency.

48.    The Teledyne Entities' litigation conduct—moving twice to dismiss in Delaware, losing on the merits, then refusing to join its own operating subsidiary—reflects a deliberate effort to delay adjudication and fragment VTT's claims, contrary to the interests of efficiency, fairness, and judicial economy.

49.    This pattern persisted from the time the Teledyne Entities identified the '369 patent as relevant prior art, evidenced by its inclusion in the IDS during prosecution of the '647 patent, which Teledyne has marked as covering the accused Boson products; through their receipt of VTT's 2024 notice letter, which included the '369 patent and a claim chart mapping its claims to the Accused Instrumentalities; and continuing through their receipt of the Complaint in the Delaware Action, which reiterated the same infringement allegations.  Taken together, these facts establish, at a minimum, that the Teledyne Entities subjectively recognized a high risk that their products infringed the '369 patent but deliberately avoided confirming that fact—constituting willful blindness.

50.    At no time have the Teledyne Entities obtained a license to the '369 patent, either express or implied.  Their continued commercialization of bolometer-based thermal imaging products constitutes unauthorized use of VTT's patented technology.

51.    Upon information and belief, the Teledyne Entities have taken no meaningful steps to design around the '369 patent or avoid infringement since becoming aware of it. Instead, they have knowingly and deliberately continued to profit

from the patented technology while disregarding VTT's intellectual property rights. Their deliberate inaction, refusal to engage in good-faith discussions, and continued sales of infringing products underscore the willful nature of their misconduct.

52. The Teledyne Entities' conduct as described—both before and following receiving formal notice of its infringement of the '369 patent—demonstrates a pattern of deliberate indifference, inaction, and continued commercialization of products embodying the patented inventions, supporting an inference of willful infringement.

53. To the extent necessary, these allegations are pleaded in the alternative to emphasize that the Teledyne Entities either had actual knowledge of the '369 patent and their infringement thereof, or, at a minimum, were willfully blind to both the existence of the '369 patent and the fact that their conduct constituted infringement.

## <u>COUNT I</u>

### (Infringement of the '369 Patent)

54. VTT restates and realleges all the foregoing paragraphs as if fully stated herein.

55. Because Teledyne OEM (and its corporate affiliates) failed to respond to VTT's numerous inquiries for information regarding the design and operation of their bolometer-based products, including the Boson and Boson+ products, VTT has not been able to determine the extent of the Teledyne OEM's infringement. Therefore, relying on the precedent established in *Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359 (Fed. Cir. 2000) and on information and belief, VTT pleads that the Teledyne OEM has directly infringed and continues to directly infringe one or more claims of the '369 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because it has made, used, sold, offered for sale, and/or imported and it is currently making, using, selling, offering for sale, and/or importing Teledyne's Boson and Boson+ thermal camera modules, as well as any other Teledyne bolometer-based thermal imaging products that incorporate bolometer elements configured with a first

16

and second bolometer electrically connected in such a way that the heating resistance of the first bolometer is biased through the heating resistance of the second bolometer to amplify detected radiation power (the "Accused Instrumentalities").

56.    Attached to this Complaint as Exhibit A2 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 of the '369 patent are met by the Accused Instrumentalities.

57.    Teledyne OEM's infringement of the '369 patent has also been indirect.

58.    On information and belief, Teledyne OEM has indirectly infringed and continues to indirectly infringe one or more claims of the '369 patent under 35 U.S.C. § 271(b), because it has induced and continues to induce third parties (including customers, distributors, and end users) to use the Accused Instrumentalities.  Such use by third parties constitutes direct infringement of one or more claims of the '369 patent.

59.    For example, Teledyne OEM has supplied and continues to supply such induced third parties with the Accused Instrumentalities along with website materials, instructions, datasheets, promotional materials and the like that instructed/instruct them how to use the Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringe one or more claims of the '369 patent, or with willful blindness to that fact.   On information and belief, Teledyne OEM will continue to encourage, aid, or otherwise cause these third parties to, for example, use their Accused Instrumentalities in ways that directly infringe the '369 patent, and Teledyne OEM has and will continue to encourage these acts with the specific intent to infringe the '369 patent.  Further, Teledyne OEM provides information and technical support to their customers and other end-users, including website materials, instructions, datasheets, promotional materials, and the like encouraging them to purchase and to use the Accused Instrumentalities with knowledge that such purchase or use constitutes an act of direct infringement of the '369 patent.  Alternatively, Teledyne OEM has acted with willful blindness to these facts.  On information and

belief, Teledyne OEM knows that there is a high probability that the purchase or use of the Accused Instrumentalities constitutes direct infringement of the '369 patent but took deliberate actions to avoid learning of these facts.

60.    On information and belief, Teledyne OEM has been aware of the inventions described and claimed in the '369 patent since at least shortly after its issuance. At a minimum, on March 26, 2020, FLIR Systems, Inc. (now Teledyne FLIR) cited the '369 patent in an IDS during prosecution of what became the '647 patent; as pleaded above, that knowledge was communicated to (and is imputable to) Teledyne OEM. The IDS citation evidences awareness within the FLIR enterprise—including Teledyne OEM—of the '369 patent's technical relevance to bolometer-based technology used in the accused Boson and Boson+ modules. On information and belief, Teledyne OEM also had actual knowledge of the '369 patent by 2021 in connection with the acquisition by Teledyne Technologies. On information and belief, and given that intellectual property due diligence is a routine and necessary part of corporate acquisitions, Teledyne OEM and Teledyne FLIR worked with Teledyne Technologies to review their relevant patents, applications, and IDS filings—including its prior disclosure of the '369 patent. Thus, at least by 2021, Teledyne OEM had actual knowledge of the '369 patent. Alternatively, to the extent Teledyne OEM claims it lacked actual knowledge, their failure to review their own publicly available patent disclosures constitutes willful blindness.

61.    Teledyne OEM's knowledge of the '369 patent extends beyond mere awareness—their own communications confirm their recognition of its relevance to their products. On June 18, 2024, VTT sent a letter to the Teledyne Entities, providing formal notice of Teledyne's infringement and enclosing a detailed claim chart mapping elements of the '369 patent to Teledyne's Boson and Boson+ thermal camera modules. Rather than deny knowledge of the patent, the Teledyne Entities' response implicitly confirmed their awareness by engaging in a discussion of infringement. However, they

failed to offer any substantive technical analysis distinguishing their products from the patented technology.  Instead, the Teledyne Entities' response consisted of conclusory assertions of non-infringement, unsupported by any meaningful explanation or evidence.  Their inability to articulate a legitimate basis for non-infringement, combined with their prior knowledge of the '369 patent through the USPTO citation and the VTT notice letter, underscores their willful and deliberate disregard of VTT's patent rights.

62.    On information and belief, Teledyne OEM has known—or has been willfully blind to the fact—that the use of the Accused Instrumentalities by third parties (including customers, distributors, and end users) constitutes acts of direct infringement of the '369 patent.  Teledyne OEM has been on notice that such use of the Accused Instrumentalities directly infringes the '369 patent since at least March 26, 2020, when FLIR Systems, Inc. (now Teledyne FLIR) cited the patent in the IDS and communicated that fact to Teledyne OEM; in 2021, when Teledyne Technologies acquired Teledyne OEM and Teledyne FLIR and gained access to their intellectual property records; on June 18, 2024, when VTT provided a formal infringement notice with a claim chart detailing how Teledyne's Boson and Boson+ products meet the limitations of the '369 patent; again on March 20, 2025, when VTT filed its Complaint in the Delaware Action asserting the same patent and products; and again on September 5, 2025, when Judge Bryson denied Teledyne's renewed motion to dismiss, holding that VTT plausibly alleged infringement and willfulness.  Despite this longstanding awareness, Teledyne OEM has continued to market, sell, and encourage third parties—including customers, distributors, and end users—to purchase and use the Accused Instrumentalities in ways that directly infringe the '369 patent.  Instead of taking steps to investigate or mitigate their infringement, Teledyne OEM has deliberately ignored the issue, failed to provide any substantive rebuttal, and knowingly induced and encouraged others to purchase and use the Accused Instrumentalities in a manner that infringes the '369 patent.  At a

minimum, their refusal to engage in good-faith discussions or identify any technical distinctions between their products and the patented technology demonstrates willful blindness.

63. On information and belief, Teledyne OEM's infringement of the '369 patent has been and continues to be willful and merits enhanced damages under 35 U.S.C. § 284. Teledyne OEM had actual knowledge of the '369 patent as described herein, or alternatively was willfully blind to its existence and relevance. Teledyne OEM has been on notice of its infringement of the '369 patent since at least March 26, 2020, when FLIR Systems, Inc. (now Teledyne FLIR) cited the '369 patent in an IDS during prosecution of what became the '647 patent and communicated that fact to Teledyne OEM; in 2021, when Teledyne Technologies acquired Teledyne OEM and Teledyne FLIR and gained access to their intellectual property records; on June 18, 2024, when VTT provided a formal infringement notice with a claim chart detailing how Teledyne's Boson and Boson+ products meet the limitations of the '369 patent; again on March 20, 2025, when VTT filed its Complaint in the Delaware Action with a claim chart detailing how Teledyne's Boson and Boson+ products meet the limitations of the '369 patent, and again on September 5, 2025, when Judge Bryson denied Teledyne's renewed motion to dismiss, holding that VTT plausibly alleged infringement and willfulness.

64. Despite this knowledge, Teledyne OEM continued to manufacture, market, and sell the Accused Instrumentalities. Teledyne OEM did not seek a license from VTT, did not redesign the relevant features, and did not assert any non-infringement or invalidity positions. These facts, in conjunction with their failure to act despite repeated indicators of risk, demonstrate that any absence of actual knowledge was the result of willful blindness.

65. Teledyne OEM's ongoing commercialization of the Accused Instrumentalities—despite notice of infringement and without asserting any good-faith

basis for believing the '369 patent was invalid or not infringed—demonstrates egregious disregard for VTT's patent rights and supports an award of enhanced damages.

66. VTT has been damaged as the result of Teledyne OEM's willful infringement.

67. On information and belief, Teledyne OEM will continue to infringe one or more claims of the '369 patent unless and until they are enjoined by this Court.

68. On information and belief, Teledyne OEM has caused and will continue to cause VTT irreparable injury and damage by infringing the '369 patent. VTT will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Teledyne OEM is enjoined from infringing the claims of the '369 patent.

## JURY DEMAND

69. VTT requests a jury trial as to all issues that are triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, VTT respectfully requests that this Court:

A. Enter judgment that Teledyne OEM has infringed one or more of the claims of the '369 patent;

B. Enter an order permanently enjoining Teledyne OEM and its officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from infringing the '369 patent;

C. Award VTT all appropriate damages for the infringement of the '369 patent, including pre-judgment and post-judgment interest, costs, and all other relief permitted under 35 U.S.C. § 284;

D. Award VTT an accounting for acts of infringement not presented at trial, including an award of additional damages for such acts of infringement;

21

E.   Enter judgment that Teledyne OEM's infringement of the '369 patent has been deliberate and willful;

F.   Treble the damages awarded to VTT under 35 U.S.C. § 284 by reason of Teledyne OEM's willful infringement of one or more claims of the '369 patent;

G.   Declare this case to be "exceptional" under 35 U.S.C. § 285 and award VTT its attorneys' fees, expenses, and costs incurred in this action; and

H.   Award VTT such other and further relief at law or in equity as the Court deems just and proper.

Dated: January 2, 2026

/s/ *John Farrell*
John Farrell (Cal. Bar 99649)
jofarrell@beckerlawyers.com
**BECKER & POLIAKOFF, P.A.**
45 Broadway, 17th Floor
New York, NY 10006
Tel: (415) 302-6000
Fax: (212) 557-0295

William R. Woodford (*pro hac vice forthcoming*)
woodford@avantechlaw.com
Todd S. Werner (*pro hac vice forthcoming*)
werner@avantechlaw.com
Jason M. Zucchi (*pro hac vice forthcoming*)
zucchi@avantechlaw.com
Kathryn A. Quisenberry (*pro hac vice forthcoming*)
quisenberry@avantechlaw.com
**AVANTECH LAW, LLP**
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Tel: (855) 750-9951
Fax: (612) 484-2001

ATTORNEYS FOR PLAINTIFF
VTT TECHNICAL RESEARCH CENTRE OF
FINLAND LTD.